## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
### SOUTHERN DIVISION

| | |
|---|---|
| **JESSICA LEE NEWMAN**, an individual,<br><br>            Plaintiff,<br>vs.<br><br>**CITY OF VERMILLION**, a South Dakota municipal corporation, **VERMILLION POLICE DEPARTMENT**, a department of the City of Vermillion, and **MATTHEW BETZEN**, an individual, in his official capacity as Chief of Police,<br><br>            Defendants. | Civ. No. 19-<u>4155</u><br><br><br><br>**COMPLAINT<br>AND DEMAND FOR<br>JURY TRIAL** |

Plaintiff Jessica Lee Newman, by and through her undersigned counsel of record, and for her causes of action against the Defendants, hereby brings this action for gender discrimination, disparate treatment based upon sex, hostile work environment, retaliation, and other violations of law, against the Defendant City of Vermillion and against the Defendant Matthew Betzen, in his Official Capacity as Chief of Police of the City of Vermillion Police Department:

### **PARTIES**

1.     Jessica Lee Newman is a female citizen of the United States of America and a resident of Burbank, Clay County, South Dakota.

2.     The City of Vermillion ("City") is a municipal corporation organized under the laws of South Dakota, located within Clay County, South Dakota, and is home to approximately 10,000 residents and the University of South Dakota.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

     3.     The Vermillion Police Department ("Department") was established by the governing body of the City and charged with exercising the police powers of a municipality prescribed by SDCL § 9-29-1, *et seq.,* to suppress disorder and keep the peace.

     4.     The Department consists of approximately nineteen sworn police officers, all of whom are employees of the City, located in a building known as the Vermillion/Clay County Public Safety Center, at 15 Washington Street in Vermillion, South Dakota.

     5.     Defendant Matthew Betzen ("Chief Betzen") is an individual and resident of Vermillion, Clay County, South Dakota, and at all times material hereto, was and is employed by the City as Chief of Police pursuant to SDCL § 9-29-18, and was and is charged with supervisory and administrative authority of the Department.  Chief Betzen is being sued in his official capacity.

     6.     At all times material hereto, Plaintiff was and is an "employee" within the meaning of 42 U.S.C. § 2000e(f) and SDCL § 20-13-1(6).

     7.     At all times material hereto, the City and the Department were and are an "employer" within the meaning of 42 U.S.C. § 2000e(b) and SDCL § 20-13-1(7).

     8.     At all times material hereto, Plaintiff was and is a member of a protected class engaged in protected conduct.

     9.     Plaintiff has exhausted all private, administrative, and judicial prerequisites to the institution of this action.

     10.     On or about May 1, 2018, Plaintiff filed a Charge of Discrimination with the South Dakota Division of Human Rights and the U.S. Equal Employment Opportunity Commission, alleging that the first date of discrimination took place on June 12, 2013, and the last date of discrimination took place on May 1, 2018.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

11.     On or about June 6, 2019, the U.S. Department of Justice, Civil Rights Division, Washington, DC, issued a Notice of Right to Sue Within 90 Days, which Notice was received on June 10, 2019.

## JURISDICTION & VENUE

12.     This action arises under the "substantive provisions" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the South Dakota Human Relations Act of 1972, SDCL § 20-13-1, *et seq.*, to redress the wrongs done to Plaintiff by the Defendants in subjecting Plaintiff to discrimination on the basis of sex and the "anti-retaliation provisions" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and applicable South Dakota law, which prohibit an employer from discriminating against any employee for engaging in protected conduct. Additionally Plaintiff seeks damages against the Defendants for their discrimination because of sex against Plaintiff in violation of 42 U.S.C. § 1983 and the 14th Amendment to the Constitution of the United States. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331.

13.     Plaintiff brings additional claims under the South Dakota Human Relations Act, SDCL § 20-13-1, *et seq.*, and South Dakota common law.  Supplemental jurisdiction is proper for such claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to this action occurred within the Southern Division of the District of South Dakota.

## FACTUAL ALLEGATIONS

15.     On or about March 4, 2013, Plaintiff was employed by the City in the Department as a sworn, uniformed officer assigned to the Patrol Division, and Plaintiff has been continuously employed as a patrol officer of the City and Department continuously since that date.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

16.    As a patrol officer in the Patrol Division, Plaintiff's duties include wearing the patrol officer uniform of the Department, sidearm, duty belt, and badge identification, carrying out proactive patrols of the community in the Department's black and white patrol cars as the most visible representatives of the Department as well as foot patrols in the downtown area of the City, responding to calls for service 24 hours a day, 7 days a week including all police, fire and medical emergencies, traffic and parking enforcement, as well as accident investigations, criminal investigations, conflict resolution, and community presentations.

17.    At all times material hereto, Plaintiff was and is the only female patrol officer in the Patrol Division of the Department.

18.    At all times material hereto, two female persons other than Plaintiff were employed by the Department, Lt. Crystal Brady ("Lt. Brady"), a detective, and Janna Mollet, administrative assistant to Chief Betzen and to the group identified within the Department as "Administration."

19.    At all times material hereto, Chief Betzen, Cpt. Chad Passick, Lt. Luke Trowbridge ("Lt. Trowbridge"), and Lt. Brady together comprised the group identified within the Department as "Administration."

20.    At all times material hereto, the sergeants in the Department were and are the immediate supervisors of the patrol officers, including Plaintiff.

21.    At all times material hereto, Sergeant Ryan Hough ("Sgt. Hough") was Plaintiff's immediate supervisor.

22.    At all times material hereto, Plaintiff performed all of her duties in a satisfactory manner and was and is well-qualified to perform her duties as a patrol officer in the Department.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

23.    In more than six years as a uniformed patrol officer, Plaintiff has received multiple awards and recognitions for her service to the Department and the City.

24.    Plaintiff has earned the following academic and professional achievements, including the following from 2014 to the present:

a.    South Dakota Law Enforcement Training Academy (February 28, 2014);

b.    Associates Degree in Police Science from Western Iowa Tech Community College (2014);

c.    Crisis Intervention Officer and Instructor (March 6, 2017);

d.    Certified National Rifle Association Handgun Instructor (August 25, 2017);

e.    Bachelor's Degree in Criminal Justice from Bellevue University (March 14, 2018);

f.    High Threat Engagement Instructor (September 14, 2018);

g.    South Dakota Law Enforcement Training Academy Firearms Instructor (September 25, 2018);

h.    Glock Armorer (November 8, 2018); and

i.    Master's Degree in Justice Administration and Crime Management from Bellevue University (October 30, 2019 - Anticipated).

25.    At all times material hereto, officers and employees of the Department of City, including members of the Administration and Chief Betzen, verbally and physically harassed Plaintiff and treated her differently on the basis of her female sex, subjected her to a hostile work environment which was offensive, intimidating, insulting and humiliating to her as a female patrol officer, subjected Plaintiff to retaliatory discipline and reprisals when similarly situated male patrol officers were not disciplined or retaliated against, including increasing intensity and frequency of unlawful harassment, escalation of harassment and bullying words and behaviors, all in retaliation for Plaintiff's complaint to her immediate supervisor and the Administration,

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

including Chief Betzen, to include, without limitation, withholding of terms and conditions of employment from Plaintiff that are extended to similarly situated male patrol officers, all of which are linked to Plaintiff's protected status and protected conduct, and all in violation of applicable federal and state law.

**The Department promotes and tolerates a work environment where Plaintiff's equipment is vandalized without consequences.**

26.     Shortly after her employment began, Plaintiff noticed that her Department-issued citation book had been vandalized and made unusable by lacing the pages with graphite, a soft-metal powder used by the Department and law enforcement in general as a dry lubricant for police equipment, such as handcuffs.

27.     Plaintiff reported the incident, but no investigation was undertaken by the Department to Plaintiff's knowledge, and the person or persons responsible were not identified.

28.     Male patrol officers did not have their Department-issued ticket books vandalized.

**The Department promotes and tolerates a work environment where male patrol officers comment that the work of a patrol officer is "a man's work" and women are verbally and graphically depicted in an offensive manner without consequences.**

29.     Male patrol officers regularly engage in a continuous pattern of characterizing the role of patrol officer as "a man's work" and not for women, including but not limited to the following specific comments:

a.     Male patrol officers assert that "female officers are pussies" and "belong in the kitchen";

b.     Male patrol officers identify a person as a woman with reference to female genitalia as a "sideways taco";

c.     In a Department-wide email regarding the soiled condition of the Department's restroom floor in which the urinal frequently overflows, questioning whether Plaintiff, as a female, is capable of using the urinal;

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

    d.    In a Department text message group regularly used for official Department purposes to all patrol officers, including Plaintiff, texting a photo of former Playboy model Jenna McCarthy in which her blue hair color is observed and with patrol officers posting text messages that stated, "I don't care. Blue hair or not, I would still do her," and "Well id be happy as long as her mouth was too busy to talk…" [sic]; and

    e.    In discussions regarding physical training and fitness with a male patrol officer who is a member of the same gym as Plaintiff, being told that he likes to position himself in the gym so that he can watch women from behind as they exercise.

***The Department promotes and tolerates a work environment where male patrol officers contrive and circulate rumors and gossip that good working relationships between Plaintiff and her sergeant supervisors must be the result of sexual favors in exchange for preferential treatment and Administration investigates Plaintiff to determine if Plaintiff is "more than friends."***

30.    Male patrol officers of the Department contrived and circulated among others in the Department false, salacious, malicious, and defamatory information that Plaintiff performs sexual favors in exchange for preferential treatment from two of the Patrol Division's sergeant supervisors.

31.    Rather than taking steps to investigate or even identify those male patrol officers who contrived and spread these salacious, malicious, and defamatory rumors, the Department opened an investigation into the conduct of Plaintiff herself, thereby greatly enhancing the personal and professional damage Plaintiff suffered as a result of the rumors and gossip and ostensibly confirming them.

32.    On or about April 22, 2014, Lt. Brady requested a breakfast meeting with Plaintiff at which time Lt. Brady inquired of Plaintiff whether her relationships with two of the sergeants was "more friends than what was professional?" and whether Plaintiff was being "coddled" by the sergeants, to which Plaintiff replied that the relationships were "nothing but professional" and that Plaintiff "got along well with them."

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

33.     Upon returning to the Department from the breakfast meeting with Lt. Brady, Lt. Trowbridge approached Plaintiff and advised that he was aware of the meeting with Lt. Brady, after which Plaintiff told Lt. Brady that she was "not more than friends" with anyone in the Department and that "good co-worker relationships are important."

34.     The discussions carried out with Plaintiff by the Administration of the Department marked the beginning, rather than the end, of the Administration inquiring of male patrol officers whether Plaintiff performed sexual favors in exchange for preferential treatment from two of the Patrol Division's sergeant supervisors.

35.     These "investigations" into Plaintiff's rumored conduct revealed no evidence of any misconduct whatsoever, but despite the hostile, offensive, intimidating, and demeaning and humiliating effects upon Plaintiff and the damage to her personally and professionally, the Department took no action to investigate those responsible for contriving and circulating the rumors.

36.     In addition to applicable federal and state law, the conduct and actions of the male patrol officers and Administration and Chief Betzen violates the Policy Manual of the City of Vermillion Police Department in Chapter 3, Section 3, Paragraph VI.A., which ensures the "right to work in an environment free from hostile, offensive, or intimidating behavior."

37.     No male patrol officer or other sworn male officer known to Plaintiff has ever been investigated by Administration for having positive working relationships with his sergeants or other supervisors due to concerns that these positive relationships can only be explained as unprofessional relationships involving "more than friendship."

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

38.     The hostile, offensive and intimidating environment and the ostracizing of Plaintiff by similarly situated male patrol officers is consistent with the Department culture that females "do not belong" as patrol officers in the Department.

39.     In December 2014, Plaintiff overheard Lt. Trowbridge and Sgt. Hough having a loud discussion with Sgt. Hough exclaiming aloud in a raised voice, "ridiculous!"

40.     When Plaintiff joined the discussion, she learned that Sgt. Ostrem accused Sgt. Hough of "rubbing elbows with Jess" during a dog injury incident earlier that month. When Sgt. Hough told Lt. Trowbridge that this was "malicious gossip" and asked what was being done to stop it or how it could be stopped, Lt. Trowbridge replied, "you should confront people right away if we hear further gossip."

41.     As a direct result of this discussion, Plaintiff resolved to thereafter work alone as a patrol officer as much as possible.

42.     These malicious rumors and gossip that Plaintiff's relationships with the sergeants involved "more than friendship" continued well into 2017 to include an incident in which Sgt. Hough was the subject of an internal affairs review over whether he had misused his authority when he confronted male patrol officers over the "more than friends" rumors and gossip and that Plaintiff was given preferential treatment by him.

43.     On or about July 5, 2017, Plaintiff was interviewed by internal affairs regarding Sgt. Hough and his use of authority in that incident. Plaintiff summarized the recurrent rumors and gossip that had been occurring continuously since 2014 and Plaintiff emphasized that Lt. Trowbridge had encouraged both Plaintiff and Sgt. Hough to confront those persons who spread this gossip as it occurs.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

44.     Plaintiff was told in response by internal affairs that the Department does not "condone bullying" and that any future bullying concerns should be reported to Lt. Trowbridge, and by this time Plaintiff knew that future incidents reported to Lt. Trowbridge would simply be forwarded to Chief Betzen, who regularly bullied Plaintiff himself.

45.     Upon information and belief, Sgt. Hough was disciplined and placed on a work improvement plan, which Plaintiff believes that if true, was in retaliation for Sgt. Hough's efforts to correct the hostile work environment and sexual harassment targeted against Plaintiff regarding the "more than friendship" issues.

46.     To Plaintiff's knowledge, none of the male patrol officers responsible for spreading these false accusations has ever been questioned or disciplined.

***The Department promotion process violates its own policies and utilizes subjective criteria rather than objective criteria in the selection process that has a disparate impact on the promotion success of female patrol officers.***

47.     The Policy Manual of the City of Vermillion Police Department provides in Chapter 4, Section – Promotions, that, "The Department shall promote or assign personnel strictly on the basis of merit and fitness. Favoritism or discrimination for any cause or reason, or because of race, color, religion, sex, or national origin will not be tolerated."

48.     On November 2, 2015, and August 3, 2016, Plaintiff was denied promotion to sergeant with the promotion awarded to a male patrol officer each time.

49.     On November 2, 2015, after the promotion process had been underway for approximately six months, male patrol officer Isaac Voss ("Officer Voss") was promoted to sergeant over Plaintiff. Plaintiff was one of three finalists along with male patrol officer Voss and male patrol officer Bryan Beringer.

-10-

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

50.    Officer Voss and Plaintiff were the patrol officers that carried out the investigation, arrest and seizure of marijuana, cash, other drugs and drug paraphernalia on June 10, 2014.

51.    When Plaintiff reported early for duty on November 2, 2015, Plaintiff asked Chief Betzen about receiving some feedback on the promotion process and Plaintiff and Chief Betzen spoke for approximately a half hour.

52.    Chief Betzen side-stepped Plaintiff's questions when she inquired about furthering her education, whether the experience of being a training officer was still as valuable in the promotion process as it once was, and why patrol officer Voss was the better choice.

53.    Chief Betzen instead spoke of his own experiences before he was promoted in Alaska when he worked in law enforcement there. Plaintiff then thanked Chief Betzen for the meeting and left for the squad room to begin her shift. As Plaintiff departed, Chief Betzen exclaimed in a loud voice so that persons in the area could overhear, "Nobody can accept the fact that they just didn't make the cut without coming and asking me a million questions." Plaintiff felt demeaned, intimidated and humiliated by Chief Betzen's statements.

54.    On May 22, 2017, Plaintiff heard from the squad room that a police radio elsewhere in the building was emitting a loud and repetitive chirping sound which signifies a low battery signal. Plaintiff located the police radio emitting these sounds and the radio was in a holder on the door of Chief Betzen's office. Chief Betzen was in his office. Plaintiff retrieved a charged battery and returned to ask Chief Betzen if she could swap out his low battery for a freshly charged one. Chief Betzen snapped at Plaintiff, told Plaintiff that he "liked his battery the way it was" and that if Plaintiff did not like the sound, "You can leave."

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

55.     Plaintiff replied that she was just trying to be helpful and returned to the squad room and closed the door. Lt. Trowbridge entered the squad room and found Plaintiff red-faced and upset and tearful. Plaintiff told Lt. Trowbridge what had happened and that Administrative Assistant Janna Mollet had witnessed it.

56.     Plaintiff told Lt. Trowbridge that she did not know who to report this verbal abuse and intimidation to, as the Chief is the top of the Department's chain of command.

57.     Lt. Trowbridge replied that he did not know who Plaintiff could report the incident to. Administrative Assistant Janna Mollet later told Plaintiff she heard Chief Betzen yelling at her.

58.     In May 2018, Plaintiff was called to respond to an intoxicated individual who was acting violently. The individual forcefully resisted arrest, punching Plaintiff in the stomach and chest. Plaintiff responded with measured and appropriate force, using her taser to subdue the individual.

59.     The Department reviewed Plaintiff's use of force, finding it to be appropriate, and no more than is necessary under the circumstances. Regardless, Lt. Trowbridge criticized Plaintiff as being "too emotional" following the incident.

***The Department elevates male patrol officers for recognition and reward while ignoring Plaintiff's equal or greater contributions, even for the same conduct.***

60.     Where Plaintiff takes substantially similar actions in the same or similar circumstances, the Department recognizes the male patrol officer's conduct, and ignores Plaintiff.

61.     By rewarding male officers, and excluding Plaintiff, the Department adopts and reinforces the view that men are more capable for employment as patrol officers, and women are professionally inferior.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

62.     As previously mentioned, on or about June 10, 2014, Plaintiff and Officer Isaac Voss responded to a noise complaint that upon investigation by them resulted in a felony arrest, the seizure of pounds of marijuana, a large amount of cash, and many other drugs and drug paraphernalia.

63.     Chief Betzen presented a personalized knife to Officer Voss in Departmental recognition of his involvement in the investigation, seizure, and arrest, but Plaintiff was not recognized and received nothing for her involvement.

64.     Plaintiff was told by Sgt. Hough that he authored a congratulatory email to Plaintiff to Administration and recommended that Plaintiff receive a couple of boxes of practice ammunition in recognition of her contributions to the investigation, seizure, and arrest with Officer Voss, which is a gesture commonly given as a "job well done" within the Department.

65.     Sgt. Hough subsequently told Plaintiff that the suggested offer of practice ammunition was refused by Administration, but told Plaintiff that the congratulatory email could be placed in Plaintiff's "anecdotal file" that each patrol officer maintains within the Department to preserve  a record of that officer's special recognition from the Department or the public.  A true and correct copy of the congratulatory email from Sgt. Hough to Lt. Trowbridge of Administration is attached hereto as **Exhibit 1** and incorporated herein by this reference.

66.     Unlike Officer Voss, the Department's similarly situated male patrol officer, Plaintiff received nothing in the way of Department recognition of her equal role in the investigation, seizure, and arrest on June 10, 2014, and even the request of her immediate supervisor that Plaintiff receive two boxes of practice ammunition as a "job well done" gesture was denied.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

67.     When Officer Voss thereafter inquired of Plaintiff whether she had "gotten her ammo," Plaintiff could only respond in the negative, that Sgt. Hough's recommendation was not authorized.

68.     On or about December 11, 2014, Plaintiff received a letter of recognition from a dog owner whose pet was struck by a motor vehicle that fled the scene after injuring the dog. Despite Plaintiff's assistance at the scene and efforts to arrange emergency veterinary care, the dog was ultimately euthanized. The owner sent an email to Chief Betzen commending Plaintiff's assistance.

69.     Plaintiff assumed that a copy of this email would be filed in Plaintiff's anecdotal file within the Department and when Plaintiff later discovered that it was not, Plaintiff was told it was "an accident" but that "it is there now."

***Plaintiff is assigned tasks that similarly situated male patrol officers are not assigned, on the basis of her female sex.***

70.     During the summer of 2016, Chief Betzen and other supervisors assigned tasks to Plaintiff that are consistent with the custom or policy in the Department to view women in a subservient role to men and the view that law enforcement is a "man's job." These tasks included vacuuming hallways and offices, sweeping rooms, cleaning bathrooms and toilets, and other cleaning and custodial duties.

71.     No male patrol officer to Plaintiff's knowledge has been assigned such tasks under the same or similar circumstances.

72.     From the end of May 2016, to September 12, 2016, Plaintiff was recovering from a work-related shoulder injury. After surgery, the orthopedic surgeon issued orders for desk duty only until cleared to return to normal duty, which occurred on September 12, 2016. Desk duty

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

was less physically demanding than sedentary work, where one may be expected to lift up to ten

pounds.

      73.     Although restricted to desk duty, Chief Betzen, Lt. Trowbridge, and Lt. Brady

engaged in the following:

a.     On July 6, 2016, Chief Betzen ordered Plaintiff to collect a box of prescription medications that weighed more than thirty pounds when the lifting restriction was not more than five pounds.

b.     On July 8, 2016, Lt. Brady ordered Plaintiff to go to Walmart and purchase several cases of Gatorade for the active shooter training which violated the lifting restriction.

c.     On July 14, 2016, Plaintiff had an orthopedic appointment in Sioux Falls, for the work-related shoulder injury that occurred at the law enforcement academy training on defensive tactics, and while Plaintiff walked by his office, Chief Betzen pointed at Plaintiff and made it clear to Plaintiff and the male patrol officers and co-workers that Chief Betzen resented Plaintiff's injury and work restrictions, commenting that Plaintiff is a liability to the Department, and told Plaintiff and the others present that he intended to incorporate a "safety officer" into the Department, to prevent "horseplay," like the kind that led to Plaintiff's injuries "because we're paying for it now."

d.     On July 18, 2016, Lt. Brady ordered Plaintiff to vacuum and sweep the Public Safety Center and check the restrooms and toilets for cleanliness. She told Plaintiff that this order was issued by Chief Betzen.

e.     On August 30, 2016, Chief Betzen ordered Plaintiff to gather up and haul from the Public Safety Center a number of ceiling tiles that had fallen from the basement ceiling of the Public Safety Center after becoming saturated when a water pipe burst, and Chief Betzen told Plaintiff that she "might need a shovel."

f.     After Plaintiff removed the ceiling tiles and cleaned up, Plaintiff learned that a male patrol officer had earlier been given the same order from Chief Betzen but that male patrol officer was allowed to refuse the task while expressing concern that the ceiling tiles contained asbestos.

g.     On September 7, 2016, Lt. Brady ordered Plaintiff to collect two urine samples from the University Police Department of the University of South Dakota and Lt. Brady told Plaintiff that this was Chief Betzen's order and that, "If a boss tells you to do something, you can just do it."

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

***The Department treats Plaintiff differently than similarly situated male patrol officers with respect to uniforms***

74.     The Policy Manual of the City of Vermillion Police Department provides in Chapter 3, Section 3 – Compensation, Benefits and Conditions of Work, Paragraph IV Uniforms and Equipment that, "covered sworn personnel will be issued the necessary uniforms and equipment to perform the duties of a police officer . . ."

75.     The Policy Manual of the City of Vermillion Police Department further provides in Chapter 3, Section 10, Sexual Harassment and Sexual Discrimination, Paragraph I.D. prohibits "The disparate treatment of an employee with respect to work benefits, conditions, assignments, promotions etc. based upon the gender of the employees."

76.     Patrol officers are issued three pairs of trousers as part of the uniform of a patrol officer. Following a weight loss program, Plaintiff was issued new pairs of trousers.

77.     On March 19, 2015, Plaintiff brought a pair of patrol officer trousers to Administrative Assistant Janna Mollet for repair of a broken zipper. Administrative Assistant Mollet told Plaintiff that she would take the pants to University Cleaners for repair by the Department, but subsequently emailed Plaintiff that the Department would not pay for the repair and asked Plaintiff if she wanted to have them repaired at Plaintiff's expense. A true and correct copy of the email is attached hereto as **Exhibit 2** and incorporated herein by this reference.

78.     Plaintiff later asked Administrative Assistant Mollet why the Department would not cover the repair cost and she replied that she was uncertain but that during her lunch break she told Chief Betzen of her plans to drop off Plaintiff's trousers at University Cleaners over her lunch break for the repair, in response to which Chief Betzen exclaimed, "We're not fucking paying for that."

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

79. During this same time, male patrol officer Jonathan Warner returned from light duty to regular duty work and two entire uniforms were purchased for him as he had gained weight and his uniforms no longer fit.

**Collusive efforts by male patrol officers to exclude and ostracize Plaintiff on the basis of gender, female.**

80. Plaintiff has also been the subject of a collusive shift-bidding effort to preclude her from receiving her desired shifts.

81. This collusive practice is intended to send a message that she is unwelcome in the Department on the basis of her female sex.

82. The Department arranges shifts by soliciting officer "bids" for desired shifts.

83. Plaintiff submitted bids for her preferred shift, the evening/night shift.

84. After a group of patrol officers arranged their bids so that Plaintiff would not receive her desired shifts, Plaintiff was told it was done in order to send a message and "break up her happy group" in reference to the previously described false and malicious rumors that Plaintiff engages in *quid pro quo* sex for preferential treatments by sergeant supervisors.

85. Plaintiff complained to the Department, which conducted an "investigation" and found the shift bidding was not discriminatory.

86. As a result of the discrimination and hostile work environment Plaintiff faces at the Department, she is often compelled to ride patrol shifts alone, or to arrange her schedule in such a manner that she is least likely to suffer continued discrimination and harassment.

87. As a direct result, Plaintiff is denied the ability to apply for available overtime shifts, and Plaintiff suffers loss of overtime pay and benefits that she would otherwise obtain in a work environment that is not hostile and is non-discriminatory.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

**Department policy regarding the use of changing and locker room facilities is unequal and discriminates against female patrol officers on the basis of sex.**

88.     The Department maintains a locker room that was, and is, used for changing into duty clothes from civilian clothing, and where each patrol officer is assigned a personal locker.

89.     An informal policy adhered to by the Patrol Division of the Department is that patrol officers do not drive personally owned vehicles while in uniform.

90.     This policy requires patrol officers to transport their duty weapon and Department-issued gear and uniform to the Vermillion/Clay County Public Safety Center, at 15 Washington Street in Vermillion, South Dakota, or to leave these items in their personal locker.

91.     The locker room is designed and configured in form and function as a locker room, with a permanently fixed bench in the middle of the room, the personal lockers affixed to the walls, a boot polisher in the corner of the room, and a separate weapons locker for Department firearms.

92.     Male patrol officers use the facilities to remove their civilian clothing down to the underwear in order to change into the patrol officer uniform for duty, and the reverse practice is followed when male patrol officers remove their patrol officer uniform and change into civilian clothing when off-duty.

93.     Plaintiff, as the only female patrol officer, would use the locker room to change into her patrol officer uniform for duty, and place a sticky note on the door indicating "lady occupied, be out in five minutes."

94.     Upon seeing the sticky note, Chief Betzen removed Plaintiff's sticky note and announced in a loud voice that the practice of Plaintiff posting a sticky note was forbidden.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

95.     Upon information and belief, Chief Betzen objected to the practice based on his individual perception, and not based on complaints or objections by male patrol officers, or other persons accessing or using the locker room.

96.     Thereafter, Chief Betzen issued a policy directive that all patrol officers must change in the adjacent bathroom.

97.     Since the summer of 2014, and continuing to the present, Plaintiff has been required to either dress and undress in the locker room without any privacy, or utilize the adjacent bathroom which is often soiled and unsanitary, and does not offer the space or convenience to change that is offered by the locker room itself, in addition to requiring Plaintiff and the male patrol officers who would adhere to this policy, to transport their duty sidearm and duty belt into the adjacent bathroom, or a restroom in another part of the building which is an unsecured area.

98.     As a result, the policy directive to change only in the bathroom is openly and flagrantly ignored by the male patrol officers who continue use the locker room as a dressing and undressing room as before.

99.     Supervisors and the Administration are aware that male patrol officers flagrantly ignore Chief Betzen's directive, which is only enforced against Plaintiff.

100.    Department policy regarding its locker room is discriminatory, and subjects Plaintiff to the use of unsafe, unsanitary, and undesirable changing facilities.

101.    Despite being made aware of the discriminatory effect the locker room policy had, Chief Betzen took no corrective action to ensure both male and female officers have equal access and use of the facilities.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

102.    On August 16, 2017, Plaintiff submitted a written complaint to the City of Vermillion regarding the sex discrimination and hostile work environment occurring against Plaintiff within the Department. The complaint was addressed to Vermillion City Manager John Prescott.

103.    By letter dated September 13, 2017, from Vermillion City Manager John Prescott, all of the matters raised in Plaintiff's complaint letter of August 16, 2017, are denied, with the exception of the locker room usage, which the City Manager determined should be available for Plaintiff's use as well as the male patrol officers, with female/male in use signage being placed on the door for privacy. A true and correct copy of City Manager John Prescott's letter, dated September 13, 2017, is attached hereto as **Exhibit 3** and incorporated herein by this reference.

104.    The Policy Manual of the City of Vermillion Police Department. Chapter 3, Section 3 – Compensation, Benefits and Conditions of Work, specifically Paragraph VI.D. provides supervisory duties on the "Chief of Police or City Manager" regarding violations of the Equal Employment Opportunity (EEO)/Sexual Harassment rights of all employees of the Department.

105.    In an email, dated September 28, 2017, Chief Betzen overruled the City Manager's determination by letter of September 13, 2017, that upheld Plaintiff's complaint that no legitimate reasons exist to deny Plaintiff the use of the Department locker room. A true and correct copy of the email, dated September 28, 2017, from Chief Betzen overruling the City Manager's determination is attached as **Exhibit 4** and incorporated herein by this reference.

106.    Immediately after Chief Betzen issued the reaffirmed policy, Plaintiff was ostracized and harassed by male patrol officers, who blamed Plaintiff for the loss of changing

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

privileges in the locker room, and Plaintiff's lunch container with her name was removed from her squad room workstation and thrown in the trash.

**The Department denied Plaintiff advancement on the basis of sex, and upon anticipating Plaintiff would be the objectively most-qualified candidate, removed objective promotion criteria to mask discriminatory decisions.**

107.    In June 2015, Plaintiff applied for an open sergeant position within the department.

108.    There was rigorous testing and an exam process which included a physical and written test.

109.    Plaintiff was the highest ranked candidate in the knowledge, skills, and abilities written test. Plaintiff was the second highest ranked candidate in the physical test.

110.    Without additional explanation, Officer Voss, a male officer, was promoted to sergeant.

111.    Plaintiff again applied for another sergeant position in August 2016.

112.    During the 2016 promotions process, however, the evaluation criteria had dramatically changed, eliminating nearly all forms of objective criteria, and replacing them with subjective processes such as an oral examination, and written essays. The fitness tests and written exams were eliminated.

113.    Candidates were instructed to provide the panel with any letters of recommendation or other materials that the candidate wished them to consider. Plaintiff provided four letters of recommendation to Chief Betzen, and a copy of each letter for each panelist. Following the interview, Plaintiff learned that Chief Betzen did not provide these letters of recommendation to the panel.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

114.   Plaintiff was again denied the promotion to sergeant.

115.   Denial of promotion causes Plaintiff loss of income, and loss of professional status that accompanies being twice denied a promotion.

***The Department has subjected Plaintiff to unlawful retaliation for her efforts to report and correct unlawful discrimination.***

116.   The Department has taken unlawful retaliatory actions against Plaintiff due to her reporting of ongoing discrimination and harassment.

117.   Plaintiff's 2013 annual evaluation noted that she "Exceeds performance standards for the job frequently" in the areas of (1) proactive patrol efforts, (2) quality of work, (3) Work relationship with co-workers and other departments, and (4) work relationships with public and others. In addition to exceeding expectations in those areas, Plaintiff met performance standards in every other evaluated category.

118.   Plaintiff's 2014 annual evaluation similarly noted that Plaintiff "exceeds performance standards for the job frequently" in the areas of (1) job knowledge and expertise, (2) proactive patrol efforts, (3) quality of work, (4) work relationships with public and others, and (5) continuing education or career development.

119.   Plaintiff's 2015 annual evaluation notes that she "Exceeds performance standards for the job frequently" in nine of eleven evaluation categories, that she "far exceeds performance standards for the job consistently" in terms of her quality of work, and in the eleventh category, she "meets performance standards for the job" in terms of proactive patrol efforts.

120.   Overall, in 2015, Plaintiff's annual evaluation rated Plaintiff as "Exceeds performance standards for the job frequently."

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

121.   Plaintiff's 2016 annual evaluation was similarly excellent, indicating that she meets all performance standards for the job required, and in many categories exceeds or far exceeds applicable standards.

122.   In 2017, Plaintiff submitted a formal complaint to the City of Vermillion regarding the discrimination and hostile work environment within the Police Department. No action was taken based on the concerns noted by Plaintiff.

123.   However, in 2017, Plaintiff received lower scores on her 2017 evaluations than she had ever received in the areas of "work relationship with co-workers and other departments," of which she received a "2" on a scale of 1 through 5, indicating that she "Meets performance standards frequently but needs improvement."

124.   Following the negative evaluation, Plaintiff submitted an addendum that objects to the low rating as retaliatory for her submission of a discrimination complaint.

125.   After submitting the addendum, Plaintiff was called to a meeting with her direct supervisor, Sgt. Hough, as well as Lt. Trowbridge and Lt. Brady.

126.   At the meeting, Plaintiff stated that she interpreted the low rating as retaliatory, and that she has never received such a low rating in this category before. Lt. Trowbridge responded by stating "maybe [Plaintiff] needs to be given more such low ratings so it isn't such a surprise when one shows up on [Plaintiff's] evaluation."

127.   Annual evaluations are an important criteria used in evaluating a candidates suitability for advancement within the Department.

128.   Law enforcement is a profession in which team-work is essential, and a negative evaluation in this area is uniquely harmful to a patrol officer's current and future employment prospects.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

129.    Several months after Plaintiffs' complaint charging harassment and discrimination was filed with the City, Plaintiff was removed from duty as a firearms instructor training new patrol officers.

130.    Training new patrol officers increases a patrol officer's pay, and being a training officer within the Department speaks highly of the training officer's knowledge, and status within the Department.

131.    Plaintiff was told she was "too inexperienced," and a male patrol officer was assigned to conduct the training, even though Plaintiff possessed equal or greater knowledge and experience in firearms training.

132.    In or around the same period of time, a second male patrol who received firearms instructor training during the same week as Plaintiff was allowed to provide firearms training to other male patrol officers in the Department.

133.    Preventing Plaintiff from conducting officer training was retaliatory and in response to her submission of a complaint to the City of Vermillion.

134.    On or about January 24, 2018, Plaintiff met with Lt. Trowbridge, Lt. Brady and Sgt. Hough where Plaintiff detailed the sex discrimination, sexual harassment, hostile work environment, and retaliation for reporting that Plaintiff is subjected to in the Department, and shared the continuing frustration that no meaningful investigative or corrective action is ever taken in regards to any of her complaints. Lt. Trowbridge told Plaintiff, that "you bring the harassment upon yourself because of your personality," and dismissed the behavior complained of as inappropriate, but not constituting sexual harassment.

135.    Rather than investigating the basis for Plaintiff's complaint, Lt. Brady and Lt. Trowbridge attempted to intimidate Plaintiff and coerce her into withdrawing her Charge.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

136.    Lt. Brady stated during the meeting that Plaintiff "brings the harassment upon herself because of [Plaintiff's] personality."

137.    On or about February 14, 2018, during a meeting with Cpt. Chad Pasick of the Department, Plaintiff was told regarding the hostile work environment in the Department that, "There is no Department policy against acting like a child or being a dick."

138.    All Department officers are required to complete sexual harassment training. However, Chief Betzen, Cpt. Chad Passick, and Lt. Brady, all in supervisory positions within the Administration of the Department, have not completed this training, to the best of Plaintiff's knowledge, and as reflected by the lack of their signatures on a posted signup sheet on which employees indicate completion of the training.

139.    The disregard of their participation in this required program sums up the culture in the Department that equal treatment, equal opportunity, and freedom from workplace hostility and sex discrimination are not values upheld by the Department and the City.

**COUNT 1**
**(City of Vermillion)**
**Sex Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964**

140.    Plaintiff incorporates the foregoing paragraphs by reference.

141.    42 U.S.C. § 2000e-2(a)(1) provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]"

142.    Defendant's conduct described herein violates 42 U.S.C. § 2000e-2.

143.    As a result of Defendant's conduct, Plaintiff has suffered and will continue to

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

suffer past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT 2
### (City of Vermillion)
### Retaliation/Reprisal Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964

144.   Plaintiff incorporates the foregoing paragraphs by reference.

145.   Title VII, 42 U.S.C. § 2000e-3(a) provides in part that it is an unlawful employment practice for an "employer to discriminate against any of his employees or applicants for employment" or "to discriminate against any individual" "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

146.   Plaintiff was discriminated against and penalized for submitting a formal complaint against the harassment and discrimination she faces in violation of 42 U.S.C. § 2000e-3. Following the submission of her formal complaint, and in further violation of Title VII, the Defendant retaliated against Plaintiff by attempting to intimidate her into retracting the basis of her complaints against the Defendant, penalizing her by removing her from job duties, and assigning those duties to male patrol officers, and providing her with negative reviews and remarks on her annual evaluation.

147.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages in excess of $75,000.

148.   Plaintiff is entitled to attorneys' fees and costs in connection with this claim.

Court File No.: Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

## COUNT 3
### (City of Vermillion)
### Retaliation/Reprisal Discrimination in Violation of
### The South Dakota Human Relations Act

149.    Plaintiff incorporates the foregoing paragraphs by reference.

150.    The South Dakota Human Relations Act of 1972 makes it an unfair or discriminatory practice to engage in any reprisal, economic or otherwise, against a person by reason of his or her protected activity. SDCL § 20-13-26.

151.    Defendant's conduct described herein, including its treatment toward Plaintiff, her demotion, and retaliation that follows, violates SDCL § 20-13-26.

152.    Following her submission of a formal complaint against the Defendant, the Defendant retaliated against Plaintiff by attempting to intimidate her into retracting the basis of her complaints against the Defendant, penalizing her by removing her from job duties and assigning those duties to male patrol officers, and providing her with negative reviews and remarks on her annual evaluation.

153.    As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer damages, including past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages.

## COUNT 4
### (City of Vermillion)
### Sex Discrimination in Violation of
### The South Dakota Human Relations Act

154.    Plaintiff incorporates the foregoing paragraphs by reference.

155.    The South Dakota Human Relations Act of 1972 makes it an unfair or discriminatory practice to discriminate against, or harass an employee on the basis of sex. SDCL § 20-13-10.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

156.   Defendant's conduct described herein violates SDCL § 20-13-10.

157.   As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer damages, including past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages.

### COUNT 5
### (Chief Betzen)
### 42 U.S.C. § 1983

158.   Plaintiff incorporates the foregoing paragraphs by reference.

159.   Chief Betzen, acting under color of state law, deliberately acted against Plaintiff as set forth above because of her gender, female, causing her to be deprived of her rights secured by the Constitution and laws of the United States.

160.   The actions, policies and practices complained of were in violation of 42 U.S.C. § 1983 in that they have denied Plaintiff of her rights secured by Title VII of the Civil Rights Act of 1964, as well as equal protection of the law secured by the Fourteenth Amendment to the United States Constitution.

161.   The actions complained of herein were made by those with final policy-making authority and/or approved by those with final policy-making authority within the Department as part of a deliberate policy of discrimination against female patrol officers, and thereafter to retaliate against such female officers when they complained about this illegal discrimination.

162.   Due to Defendant's actions, Plaintiff has suffered damage to her career and reputation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation and stress.

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

163.    The discriminatory acts of the individual Defendant as set forth above were willful, deliberate, malicious, and done with gross and reckless indifference to the federally protected rights of Plaintiff.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jessica Lee Newman prays for judgment against Defendants as follows:

1.    That the conduct and actions complained of in this Complaint be determined to violate the rights secured to Plaintiff under Title VII, the South Dakota Human Relations Act, 42 U.S.C. § 1983, and South Dakota common law;

2.    For all relief available to Plaintiff, including compensatory relief and damages arising from loss of past and future income, benefits, inconvenience, mental anguish, loss of enjoyment of life, humiliation and stress, and other damages, with prejudgment interest, in an amount in excess of $75,000;

3.    For punitive damages as allowed by law;

4.    For Plaintiff's attorneys' fees, costs and disbursements incurred herein; and

5.    For such further, other and additional relief as the Court deems equitable and just.

Dated at Sioux Falls, South Dakota, on this 6th day of September, 2019.

HUGHES LAW OFFICE

John R. Hughes (john@hugheslawyers.com)
Stuart J. Hughes (stuart@hugheslawers.com)
101 North Phillips Avenue – Suite 601
Sioux Falls, South Dakota 57104-6734
Telephone: (605) 339-3939
Facsimile: (605) 339-3940

*Attorneys for Plaintiff*

Court File No.:  Civ. No. 19-_____
*Complaint and Demand for Jury Trial*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable in the above-captioned action.

John R. Hughes

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jessica Lee Newman

**DEFENDANTS**

City of Vermillion, Vermillion Police Department and Matthew Betzen

**(b)** County of Residence of First Listed Plaintiff   Clay County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Clay County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John R. Hughes and Stuart J. Hughes of Hughes Law Office
101 North Phillips Avenue – Suite 601, Sioux Falls, SD 57104
(605) 339-3939

Attorneys *(If Known)*
Lisa K. Marso of Boyce Law Firm, LLP
300 South Main Avenue, Sioux Falls, SD 57104
(605) 336-2424

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
   Plaintiff

☒ 3  Federal Question
   *(U.S. Government Not a Party)*

☐ 2  U.S. Government
   Defendant

☐ 4  Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC Section 2000e, et seq., 42 USC Section 1983
Brief description of cause.
Employment discrimination on basis of sex and denial of civil rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv P.
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE                                DOCKET NUMBER

DATE   September 6, 2019
SIGNATURE OF ATTORNEY OF RECORD   John R Hughes

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE